## Stansbury v. School District of the City of Chester

*John J. Auritt,* for plaintiffs.

*Guy G. deFuria,* for defendant.

DIGGINS, J., October 8, 1970.—This is an equity action by the parents of five[1] school-expelled or school-suspended youngsters on behalf of themselves and members of their class in order to enjoin the School District of the City of Chester from:

1. Preventing named and class plaintiffs from attending public schools in the City of Chester;

---

[1] Annette Johnson was readmitted to school the day the complaint was filed.

2. Suspending/expelling[2] named and class plaintiffs before they are given a proper hearing, except when the student presents a manifest danger to persons or property at the school;

3. Conducting suspension/expulsion hearings until the district promulgates and adheres to regulations sanctioned by the laws of Pennsylvania and the United States Constitution which guarantee fundamental rights of due process for all students;

4. Conducting suspension/expulsion hearings with persons other than school directors, fully participating as members of the hearing committee;

5. Conducting suspension/expulsion hearings with school board members who are neither impartial nor competent;

6. Suspending/expelling named and class plaintiffs from school and subsequently filing a petition with juvenile court on the same charges that led to the suspension/expulsion;

7. Indefinitely excluding named and class plaintiffs from the public schools pending juvenile court adjudication; and

8. Preventing named and class plaintiffs from attending public schools after a juvenile court judge has dismissed the charges against them.

The procedural and substantive aspects of each case vary, but the issues are essentially identical. The defense contends that equity has no jurisdiction. We disagree and we find that equity has jurisdiction.

The focal point of this case is an allegation brought by plaintiffs, through the Delaware County Legal As-

---

[2] Technically, suspension is temporary and expulsion is permanent. However, as these terms relate to the named and class plaintiffs, this distinction is not relevant for the purpose of analysis. Those suspended students, with whom we are concerned, are suspended indefinitely or for great lengths of time.

sistance Association, Inc., a socially oriented legal assistance group, that pupils in the school system of the City of Chester are suspended or expelled without regard to the fundamental principles of due process. The school board, in an attempt to provide these safeguards, adopted the following resolution:

"BE AND IT IS HEREBY RESOLVED, by the Board of School Directors of the School District of the City of Chester, in accordance with Section 1318 of Article 13 of the Public School Code, that:

"1. Every Principal or Teacher in charge of a Public School may temporarily suspend any pupil on account of disobedience or misconduct.

"2. In any such case, the Principal or Teacher shall give immediately a signed written statement of the facts and the name and address of the pupil to the Principal, (unless the temporary suspension is made by the Principal himself), and to the Superintendent of Schools, and to the School District Suspension and Expulsion Committee, notice to the said Committee to be given to the Director of the Home School Relations Office.

"3. The powers of the Board are hereby delegated to a committee of three (3) members of the Board, appointed by the President of the Board from time to time, which Committee shall be known as Committee on Suspension and Expulsion of Pupils, and the appointment by the President to the said Committee of Clarence H. Roberts, Edward Parry and Anthony Przedzial as the present members, is hereby approved.

"4. Upon receipt by the said Committee of a written report of the suspension of any pupil, the Committee shall, by written notice to the parents or guardian of the said pupil, fix a time and place for a hearing upon the suspension, enclosing a copy of the reported facts. Said notice shall be sent by certified mail and shall request the attendance of the pupil at the hearing. In

addition the said notice shall state that the pupil and any person acting for him will have the right to hear the testimony of the accuser or accusers, examine witnesses, and offer testimony, and that the pupil may be represented by counsel.

"5. The Committee shall make and retain a written record of the proceedings at the hearing and with the names of the persons in attendance.

"6. As promptly as possible after the conclusion of the hearing, the Committee by written order may reinstate the pupil, suspend the pupil for as much further time as it may determine, or may permanently expel him.

"7. A copy of the order of the Committee shall be sent by certified mail to the pupil in care of his parents or guardian, and to the Superintendent and Principal."

In the opinion of the chancellor, the intent and purpose of this resolution is good. It was promulgated to safeguard the interests of the pupils. However, the record amply discloses that the administrative group, acting under the authority of the resolution, almost totally disregards its provisions, with the result that heretofore the procedures leading to the suspension or expulsion are little, if any, better than those in vogue before the resolution. Oftentimes the provisions for notice are omitted. Other times notice is orally given to the child only. Other times, a written notice to the parents is had, but even there these notices have been woefully deficient. They do not state the nature of the hearing or of the offense charged, the name of the accuser, that the student may be represented by counsel and, if indigent, counsel will be provided, that the student may produce witnesses, etc. Witnesses are not sworn; incompetent and unverified testimony is allowed; participation of lawyers, when present, is unduly limited; right against self-incrimination dis-

regarded; and there are no guidelines on how the hearing should be conducted.

Counsel for plaintiffs agrees with the chancellor that the basic intent and purpose of the resolution are good. Indeed, section 1318 of the Public School Code of March 10, 1949, P. L. 30, 24 PS §13-1318, provides that before a student can be placed on prolonged suspension or expelled from school, he must first have a proper hearing. This resolution is an implementation of that mandate. It is the failure to properly implement the resolution which is the principal thrust of the attack and the chancellor agrees that the record supports this position.

The chancellor is informed dehors the record from both sides that since the hearing, and the attitude of the chancellor expressed at the time of the hearing, things have improved in this area in the defendant school district, but still leave much to be desired, and they think and urge upon the chancellor that the resolution should be amended and expanded. While the chancellor does not think that he has the right or duty to legislate for the school district, nevertheless he feels that in many instances the suggestions made by plaintiffs have merit and should be implemented by the school board. Several of the requests which plaintiffs make of the court in this action are legislative in nature and the chancellor must be careful not to legislate. However, the chancellor does make some suggestions to the board: It is suggested that because of the closeness of the members of the hearing board to the problem, and sometimes preconceived ideas of what the result should be, and because of the tendency to resent efforts made to have the hearing board follow the letter as well as the spirit of the resolution, there should be a review board provided, and it is suggested that this review board should be made up of at least one member from the county school district so as to get a

more objective and detached review where sought by the pupil or his parents. The chancellor agrees with this suggestion.

There is also the question of what to do with juveniles who are behavioral problems to the extent that they are disruptive in class but not candidates for institutional commitment through the juvenile court. Such situations present the anomaly where the child is not acceptable in the regular school classes and should not be committed by the juvenile court and is, therefore, on the streets or is committed simply to prevent this situation. Since the law in Pennsylvania requires compulsory education and compulsory attendance, it would seem that a proper interpretation of the intent and purpose of this legislation would require the school board to do as it does with the slow learning group, that is, provide special classes with disciplinary rules designed to meet the special situation, and with teachers cognizant of the problem and sympathetic to it, who are capable of maintaining the discipline.

One further suggestion is that when a pupil is to be processed under the resolution, he and his parents should be advised of the availability of legal counsel through the Delaware County Legal Assistance Association, Inc. (OEO).

The prayer of the petition is in six parts and the chancellor will deal with each separately:

(a) That defendant, School District of the City of Chester, be preliminarily and permanently enjoined from preventing named plaintiffs, as well as class plaintiffs, from attending the public schools of the City of Chester.

This will be affirmed as to those in the class and specifically named who were disciplined under the resolution before the filing of this suit and shall apply to alleged improper conduct on the part of all such

individuals prior to the institution of this suit or since then if the procedures mandated under the resolution were not followed.

(b) That defendant, School District of the City of Chester, and its Educational Aid Panel be preliminarily and permanently enjoined from excluding indefinitely students from the public schools pending juvenile court adjudication.

This will be declined, since in the opinion of the chancellor the effect of this total opinion will be to guarantee the proper procedure which will render due process to the pupils and the school district must be permitted to function in the area of discipline.

(c) That defendant, School District of the City of Chester, and its Educational Aid Panel be preliminarily and permanently enjoined from conducting its hearings and reviews until it promulgates and adheres to regulations permissible under the laws of Pennsylvania and which guarantee fundamental rights of due process to all those students coming before the panel.

This is too general in scope. What this record shows plaintiffs to have proved is that the school board's resolution is legal under the Public School Code but that the administration of it neglected and ignored many of its important provisions. Therefore, the chancellor is of the opinion that the decision in this case must sustain the basic legislative document, to wit, the resolution, but directs that the school board proceed according to the specific mandates therein and that it be enjoined from suspending or expelling any student until and unless those procedures have been had.

(d) That defendant, School District of the City of Chester, and its Educational Aid Panel be preliminarily and permanently enjoined from preventing the public school attendance of those plaintiffs whose

school incorrigibility petitions were dismissed by a juvenile court judge.

This points to the situation dealt with in the adjudication, where we suggest that the school board provide a special class for individuals who are disruptive behavioral problems but not incorrigible to the extent that the juvenile court will commit. It is the hope of the chancellor that something will be done by the school board along these lines. If not, since we propose to retain jurisdiction of this complaint, then any specific instances falling in the above category may be called to the chancellor's attention on the record and they will be dealt with as they arise.

(e) That plaintiff be awarded his costs in this action.

In this respect, the costs will be placed upon the school district.

(f) That plaintiffs and class plaintiffs be awarded such other and further relief as is necessary and appropriate.

This will be afforded by retaining jurisdiction of this complaint so that as specific instances arise, they may be dealt with on the merits.

Therefore, the chancellor enters the following

## DECREE NISI

And now, October 8, 1970, upon consideration of the record as well as briefs submitted on behalf of the respective parties, and after hearing, it is ordered, adjudged and decreed that:

(a) Defendant, School District of the City of Chester, is herewith enjoined from preventing the named plaintiffs, as well as class plaintiffs, from attending the public schools of the City of Chester, except in accordance with the procedures and guarantees mandated by the aforesaid resolution; and

(b) Defendant, School District of the City of Chester, shall pay the costs; and

(c) Jurisdiction retained.

### ORDER

The prothonotary is directed to give notice immediately to the parties or their attorneys of record of the filing of the above decree nisi and, if no exceptions be filed thereto within 20 days after the service of such notice, to enter the said decree nisi, upon praecipe, as a final decree.